not properly have assessed this iron as bars of rolled iron at eight-tenths of one cent per pound, under the enacting clause of paragraph 124.

And now, January 16, 1904, it is ordered, adjudged, and decreed that the decision of the Board of United States General Appraisers in this case be, and the same is, affirmed.

## GEORGE SILVA & CO. v. UNITED STATES.

(Circuit Court, S. D. New York. November 4, 1903.)

### No. 3,305.

1. CUSTOMS DUTIES—CLASSIFICATION—ORNAMENTAL CRUDE PEACOCK FEATH-ERS.

Peacock feathers in a crude condition, used in that state for ornamental purposes, are dutiable under the provision in paragraph 425, Tariff Act July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 191 [U. S. Comp. St. 1901, p. 1675], for "ornamental feathers," and not under that in the same paragraph for "feathers * * * crude."

Application by George Silva & Co., importers, to review a decision of the Board of United States General Appraisers, which affirmed the assessment of duty by the collector of customs at the port of New York.

The merchandise in question consisted of peacock feathers, which the board found from the evidence to be in a crude state, but to be ornamental in that condition. The assessment of the collector of customs was affirmed on the authority of a published decision of the board—In re Jordan, G. A. 4,889, T. D. 22,982—where the same question was at issue, which reads as follows:

"The merchandise consists of peacock feathers and pelican quills, which were returned by the local appraiser as ornamental feathers, and assessed for duty at the rate of 50 per cent. ad valorem under the provisions of paragraph 425 of the act of July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 191 (U. S. Comp. St. 1901, p. 1675). They are claimed to be dutiable at 15 per cent. ad valorem under said paragraph as 'quills and feathers in the natural state, not advanced by any process of manufacturing.' The local appraiser in his report states that the pelican quills are 'crude feathers, imported and used expressly for the ornamentation of ladies' hats,' and an inspection of the official samples of the peacock feathers shows that they are also crude. The only question to be decided, therefore, is one of law, namely, whether the articles, being ornamental feathers in a crude state, are more specifically provided for under the provision for 'feathers and downs of all kinds * * * crude,' or under the provision for 'ornamental feathers.'

"Paragraph 425 is as follows: 'Feathers and downs of all kinds, including bird skins or parts thereof with the feathers on, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this act, fifteen per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner, including quilts of down and other manufactures of down, and also dressed and finished birds suitable for millinery ornaments, and artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this act, fifty per centum ad valorem.'

"It is clear that crude ornamental feathers are included within the terms of the first part of the paragraph. It is equally clear that the same feathers, 'if dressed, colored, or otherwise advanced or manufactured or manufactured in any manner,' would be within the terms of the second part of the paragraph, even if the words 'ornamental feathers' were omitted from the paragraph. It therefore follows that if, as the protestants contend, the articles in question

are entitled to entry at 15 per cent. ad valorem duty, under the first part of the paragraph, such articles would, when advanced in condition, be covered by the provision for 'feathers and downs of all kinds, * * * when dressed, colored, or otherwise advanced or manufactured in any manner.' Hence, inasmuch as ornamental feathers would be provided for both when crude and when not crude, the specific provision for 'ornamental feathers' would be absolutely unnecessary and inoperative. The only reasonable interpretation of the paragraph in question that will give effect to these words is that they are to be taken in the nature of a proviso, on the theory that Congress intended that ornamental feathers should be excluded from the general words of the paragraph, and therefore provided for them specifically. This being so, and the term being used without words of limitation, all ornamental feathers, whether crude or advanced in condition, would be included within the term.

"As indicating the intention of Congress to subject crude ornamental feathers to a higher rate of duty than other crude feathers, it should be noted that the language of the present act differs from the corresponding paragraph (328) of the act of August 27, 1894, c. 349, § 1, Schedule N, 28 Stat. 534, in that the words 'suitable for millinery use,' after the words 'of whatever material composed,' in the act of 1894, are omitted from paragraph 425 of the present act. This change was undoubtedly made in view of board decision G. A. 3,870, overruling a previous decision of the Board (G. A. 3,810), which held that crude plumes of birds of paradise were dutiable under the provision for 'ornamental feathers suitable for millinery use' in paragraph 328 of the act of 1894, and were not free of duty under the provision in paragraph 477 of said act (chapter 349, § 2, Free List, 28 Stat. 540) for 'feathers and downs of all kinds, crude.' The ground stated in G. A. 3,870 for overruling G. A. 3,810 was that further testimony had shown that the goods were not suitable for millinery use. Congress, in striking out these words in the act of 1897, no doubt had in mind these two decisions, and evidently assumed that with these words omitted G. A. 3,810 would be followed, and ornamental feathers be subjected to the higher rate, whether crude or advanced in condition, and whether suitable for millinery use or not.

"We accordingly hold that ornamental feathers, whether crude or advanced in condition, are dutiable at 50 per cent. ad valorem under the provision for ornamental feathers in paragraph 425, and overrule the protests, and affirm the decisions of the collector."

Albert Comstock, for importers.

Charles Duane Baker, Asst. U. S. Atty.

Before HAZEL, District Judge.

At the close of the argument the decision of the Board of General Appraisers was affirmed in open court, without opinion.

---

### In re NIAGARA CONTRACTING CO.

(District Court, W. D. New York. January 27, 1904.)

### No. 1,386.

1. BANKRUPTCY—MANUFACTURING CORPORATIONS.

A corporation engaged in constructing buildings and bridges by contract, furnishing the labor, while others furnish the materials, is a manufacturing corporation, and subject to be adjudged an involuntary bankrupt, under Bankr. Act 1898, § 4b (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]).

¶ 1. What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.